## Jiménez *v.* Díaz Caneja.

## Appeal from District Court of San Juan.

No. 193.—Decided January 30, 1908.

Appeal—Judgment Contrary to the Evidence.—In order that the Supreme Court may consider on appeal the facts proved at the trial, the appeal must have been taken within 15 days after the rendition of judgment.

Libel per se—Malice.—In accordance with the definition of libel contained in section 2 of the act to authorize civil suits for libel and slander, approved February 19, 1902, the words "scandal," "usurper" and "thief" constitute libel *per se* and carry with them the element of malice.

Id.—Privileged Communication.—It is a general rule that where in a defamatory publication words are used which are libellous *per se*, a presumption of malice on the part of the author of the communication will exist and, in such a case, damages will be presumed to have been caused; but in accordance with section 5 of the said act, such a presumption of the existence of malice will be removed when the person to whom the defamatory communication is addressed is a relative, a ward, or partner or occupies any other similar position.

Id.—Community of Interest.—Community of interest in a property is the principal basis upon which to determine the existence of a partnership. A community of interest exists between lessee and lessor, principal and agent, attorney in fact, and his principal, respectively, and is sufficient to warrant their mutual relations being classified as similar to those of partners, and to characterize any communication passing between them as privileged, under the provisions of section 5 of the said act.

Id.—Evidence of Malice.—Where such relations as those referred to in section 5 exist between the parties, the burden of proof of the existence of malice and damages is upon the plaintiff, and he must prove the same by evidence other than the document deemed to be libellous. In the absence of malice no damages can be presumed to have been caused.

Id.—Publication.—It is not necessary that the communication should be addressed to the person libeled because generally such communications are addressed to some other person and publication occurs when the communication is exhibited to a third person.

The facts are stated in the opinion.

*Mr. López Landrón* for appellant.

*Mr. Hernández López* for respondent.

Mr. Justice MacLeary delivered the opinion of the court.

This is an appeal from a judgment rendered by the District Court of San Juan in a case for the recovery of damages

for libel. The judgment below was rendered on the 31st of May, 1907, and the appeal taken on the 28th of June following, more than 15 days thereafter.

Hence, under section 295 of the Code of Civil Procedure the facts proven on the trial cannot be considered here and the appeal must be decided on the law points alone arising from the record. *Successors of Olivas* v. *Matienzo & Co.*, decided the 12th of December, 1907 (13 P. R. Rep., p. 285), and cases there cited.

The opinion of the trial court states the case very fully and may be copied here as a basis for a discussion of the questions presented. It reads as follows:

"*Opinion.*—In this suit a complaint was filed against the defendant, demanding an indemnity for words constituting a libel contained in two letters of his one dated the 6th of May, 1904, and the other without date, but written approximately during the same period as the former.

"The said letters are not directed to Don Pedro Jiménez Sicardo, plaintiff herein, but to Don Bartolome Borras.

"About that time Manuel Díaz Caneja was the attorney in fact of the *Reverendas Madres Monjas Carmelitas* (the Reverend Carmelite Mothers), to manage their properties and he in such capacity leased one of their properties to Don Bartolome Borras and at the same time, and by virtue of the said document conferred upon Mr. Borras and Ginard authority to represent him before the courts.

"For such reason and on account of being the attorney in fact of Mr. Díaz Caneja, as well as on account of the lease and the difficulties of taking possession of the property leased, several letters passed between the defendant Manuel Díaz Caneja and the said Mr. Borras and Ginard, it appearing in one of them that, in making reference to those persons who opposed the taking possession of the property leased, Mr. Caneja said 'there was no necessity for an ejectment proceeding because this is brought against persons who have some title, and not against a usurper and thief as occurs in the present case'; and in another letter he said to Mr. Borras that he had to defend himself against the scoundrels (*tunantes*).

"From all the evidence taken together the court is of the opinion that those words were directed to Don Pedro Jiménez Sicardo, who

is the person who was leading the opposition to the possession of Borras, made by the Sucesión Jiménez Cordova, and the court is also of the opinion that those words *per se* constitute a libel.

"But it is alleged by the defendant that they were directed as has been stated to Mr. Borras and not to Mr. Jiménez Sicardo, and that Mr. Borras was by that matter, and by the said power of attorney, involved in the business with Mr. Díaz Caneja, as attorney in fact for the *Reverendas Madres Monjas Carmelitas.*

"The law authorizing civil actions for the recovery of damages for libel and slander approved on the 19th of February, 1902, provides, in section 2, that libel is malicious defamation publicly made against any person by one of the methods therein described; section 4 states which are privileged communications, defining them as those which although they contain libelous words are not actionable, under none of which cases come the letters of defendant; and section 5 provides two distinct cases; it says that 'malice shall be presumed to exist in any injurious communication or writing addressed to any person other than a relative within the third degree, or to a person whom the author has under his guardianship, or when said communication passes between persons having business in partnership or other similar association.

"So that this section—when the communication is addressed to a person who is not a partner or a relative or does not fall within any of the other cases specified thereby—shows, to begin with, that the presumption of malice is against the author of the communication; but on the other hand, that presumption against the defendant in those cases disappears when the defamatory writing is directed to a relative, ward or partner; so that in the first case, as the presumption is against the defendant, the plaintiff is not bound to prove that there was malice; and the contrary appears from the other examples in said section, or in other words, the presumption being in favor of the defendant that he did not write the communication maliciously in regard to the plaintiff, the burden of proof is on the latter to show that there was malice.

"The court admits that the defendants Díaz Caneja and Don Bartolome Borras and Ginard, to whom he addressed the letters which are the object of this suit, by reason of the relations heretofore mentioned, come within the provisions of the last words of section 5, or that they had business relations or were associated in a manner similar to a partnership. That is to say, they had interests which were related and in common, in desiring to remove obstacles which

were opposing their possession of the property leased by Borras, and for which purpose he was the attorney in fact of Díaz Caneja.

"This being so, there is in favor of Manuel Díaz Caneja the presumption of having acted without malice, and the burden is on the plaintiff to prove that there was malice on the part of the defendant.

"From the evidence introduced it does not appear that in writing those words Mr. Caneja intended maliciously to vex, discredit and dishonor Mr. Jiménez Sicardo, inasmuch as aside from the words themselves there is no act which shows that malevolent intention on his part. As may be seen from the letters themselves they were written only for Mr. Borras, confident that he was addressing a representative of his, an interested party like himself in the business concerning the property, and he could not suspect that letters written thus in confidence should after a long period had elapsed, be delivered to the plaintiff.

"So that the most essential requisite is lacking in order that a slanderous word may be made the basis of an action in cases like the present one, as malicious to the extent of entitling one to recover for damage.

"For this reason the court is of opinion that the complaint should be dismissed."

The legal questions necessary to a decision may be most readily and properly taken from the brief of counsel for appellant, who was plaintiff in the court below, and are 26 in number. They will be examined *seriatim*.

First. The counsel says:

"There is no doubt, as the court below says, that the special law, which above all others must be preferred for the classification of this legal question, is the statute approved on the 19th of February, 1902, authorizing civil actions to recover damages for libel and slander."

There is no disputing this proposition; but the text of the statute may well be explained by many decided cases to be found in the American jurisprudence which we shall advert to later in the course of this opinion.

Second. The 2d point made by counsel is that:

"In accordance with section 1 of said law the civil action for damages for libel and slander is a very speedy one. All persons who

write libelous articles or letters shall be jointly responsible for the damages caused by such libels and slanders, as is declared in section 1."

There is no doubt, under this section, of the responsibility of defendant, unless he is excused under some other provision of the law.

Third. Counsel proceeds to the definition of a libel given in the statute as follows:

"In accordance with section 2 of the same law, libel is defined as a malicious defamation of a person made public by writing, printing, sign, picture, representation, effigy, or other mechanical mode of publication tending to subject him to public hatred or contempt, or to deprive him of the benefit of public confidence and social intercourse, or to injure him in his business, or in any other way to throw discredit, contempt or dishonor upon him."

This definition is correct, and in strict accordance with that given in American jurisprudence, and prevailing in all the courts of the American continent. (2 Bouvier's Law Dict., p. 207 *et seq.*)

The trial court followed the statute strictly, and in the opinion found in the record, correctly held the words complained of, to wit, *"Tunante"* (scoundrel), *"Usurpador"* (usurper) and *"Ladrón"* (thief) to be libelous in themselves, and to carry with them the evidence of malice as contended for by the plaintiff, and appellant.

Fourth. The discussion given by counsel under the 4th point is a mere elaboration of the 3d and requires no further attention.

Fifth. The 5th law point presented comes to the milk in the cocoanut. It is as follows:

"From another point of view does, in these cases, presumptive malice exist? Or does any of the circumstances required by section 5 of the statute exist so as to destroy the presumption of malice?

"Section 5 of the statute says:

"It will be presumed that there is no malice in any injurious communication or writing addressed to a relative within the third degree, or a person under guardianship, or to persons having business in partnership, or other similar association."

There is no denying the fact that the person addressed in the letters is neither a relative nor a ward of the defendant; and the case turns on the point of whether or not they are "persons having business in partnership, or other similar association." (Section 5 of the Libel Statute of Porto Rico, Revised Statutes, p. 215, art. 571.)

This question is fully and fairly treated in the opinion of the trial court, which is, in our view, on this point substantially correct. It is a general rule that where terms are used in the defamatory publication which are libelous *per se* the presumption of malice exists against the author of the communication; but under the section of the statute quoted this presumption of malice vanishes when the person to whom the defamatory writing is addressed is shown to be a relative, or a ward, or a partner or one in other similar association.

There is no claim or pretence that the parties to the correspondence stood in the relation of relatives, or guardian and ward, or of partners; but it is claimed on the one hand and denied on the other that he occupied a relation similar to partnership.

Let us see. Messrs. Díaz Caneja and Borrás stood in the business relations to each other as is shown by the record and admitted to be of landlord and tenant, principal and agent, and that Borrás was the attorney in fact of Díaz Caneja and had authority in regard to certain lands to remove certain obstacles to the possession of the lands leased by him from his principal. This relation was similar to that of partnership in a most important particular. That is to say, the parties had a community of interests in regard to the business, which concerned the lands about which the defamatory letters were

written. A community of interest in property is one of the principal criteria by which a partnership is found to exist. And in this respect the relation of principal and agent is similar to a partnership. We will make a few extracts from decisions of the American courts to support this general principle. They are as follows:

"Where persons, under an agreement to furnish the outlay and share in the profit and loss equally purchased and had conveyed to them a parcel of real estate, for the purpose of dividing it up into lots and selling them for gain, and did sell some lots and build on others out of common funds, and rent them for their common advantage, it was a partnership adventure." (*Thrall* v. *Crampton,* Fed. Cas., No. 14008, 9 Ben., 218).

"Complainant and respondent entered into an arrangement to deal in lands affected with titles, and neglected properties, respondent to furnish the purchase money, and the titles to be taken either in the name of complainant or a third person. Respondent was to pay for an abstractor to run chains of titles, and complainant was to superintend the work, look up the owners of the property, conduct the negotiations for the purchase, and, when the title was acquired, was to have a half interest; the one half of the purchase money to be secured by him by giving his note therefor to respondent, with deed of trust on the half interest, the profits on resale to be equally divided. *Held:* To constitute the parties partners in the lands so acquired." (*McElroy* v. *Swope* [C. C.], 47 Fed., 380.)

"Cattle were delivered to plaintiff and two other persons to be kept for a time, at the expiration of which they were to be sold by defendant. After deducting the first cost of the cattle, defendant was to retain one-half of the remainder of the proceeds, the other half to be equally divided between plaintiff and the other persons. *Held:* That in this there was no partnership, for there was no community of profit and loss, or of ownership in the subject of the contract." (*Beckwith* v. *Talbot,* 2 Colo., 639.)

"Where a complaint alleges that plaintiff was entitled to a share in the profits of a transaction set out in the complaint, that he was to contribute more or less of his time, and was to repay the defendants money advanced by them for his interest, without regard to profit or loss, it alleges facts constituting him a partner, and when the business is at an end, and the assets reduced to money, he is entitled

to an accounting." (*Stern* v. *Harris,* 40 Minn., 209; 41 N. W., 1036.)

"The occupancy and cultivation of a farm of another, under an agreement that the crops raised be divided between them in a certain proportion, does not necessarily constitute the owner of the soil and the tiller thereof copartners; but the test of the relation is whether or not each intend to constitute the other his agent in the transaction of the common business." (*Donnell* v. *Harshe,* 67 Mo., 170.)

A community of interests, which is the distinguishing mark of a partnership, also exists between a principal and his agent or attorney in fact. The relation is also one of mutual confidence in both cases.

Under this state of the law, and we believe these decisions are in line with the general current of authority, we agree with the trial judge in that paragraph of his opinion in which he says:

"This being so, there is in favor of Manuel Díaz Caneja the presumption of having acted without malice, and the burden is on the plaintiff to prove that there was malice on the part of the defendant."

There is no doubt that the burden of proof shifts under the relations existing between the parties to the correspondence; and instead of malice being presumed against the defendant from the use of the libelous words it must be proven by the plaintiff by other evidence than the libelous documents themselves.

Sixth. The 6th point made by counsel is in regard to the publication and is as follows:

"That the letters presented as libels and slanders were published according to the meaning of the law, there is no doubt. They were sent by Díaz Caneja to Borras in order that the latter should read them, as he read them and some other person might have read them. The statute is very explicit."

The brief cites section 8 of the Libel Law. It is in point, and there can be no doubt that the publication was effected when Borras showed the letters to other persons. But it

does not appear that the publication was malicious, owing to the community of interests existing between the parties to the correspondence. The doubt expressed by the trial judge in his opinion in several places, and particularly where he says:

"The said letters are not addressed to Don Pedro Jiménez Sicardo, plaintiff herein, but to Don Bartolome Borras."

is not justified. The letters did not need to be addressed to the plaintiff. In fact, a libel is generally addressed to a third person rather than to the party who is the object of the libel. But in the disposition made of this case by the trial court this point is immaterial, and needs no further attention.

Seventh. The 7th point raised by counsel in his brief has regard to exemplary damages and in view of the discussion made above in the 5th point is immaterial. The same may said of the 8th, 9th, 10th, 11th, 12th, 13th, 14th, 15th, 16th, 17th and 18th points which are presented in the brief. Had the appellant prevailed in his contention on the fifth point these matters would have been pertinent to the decision of the case. There is no question that the three words complained of are libelous *per se;* and malice, as well as consequent damage, would be presumed unless the defendant is brought within some one of the four exceptions mentioned in section 5 of the libel law. In our opinion this has been done, and malice and consequent damage must be shown by the plaintiff. We must presume that he failed to do this, as the trial court so found and, under section 295 of the Code of Civil Procedure, we cannot examine the facts on this appeal, which was taken too late for that purpose, as heretofore stated.

19th. We have discussed and decided this 19th point already adversely to the appellant, and need not duplicate the observation here.

20th. As claimed in the 20th law point presented in the brief there can be no doubt that the language is excessively

denunciatory; but the burden of proof having shifted under the Libel Law some additional evidence of malice is necessary to the mere words used in the offensive letters; and the trial judge has found that there is no such evidence. With this finding of fact this court cannot, as the case appears in the record, interfere. That decision must stand, as the appellant virtually acquiesced in it by failing to file his writing of appeal within the 15 days prescribed by the statute.

21st. This 21st point is a mere repetition of other points, in which it is included, clothed in different words. The age and respectability of the plaintiff does not appear from the record presented here; further than the presumption which the law raises that every man has a good character until the contrary is shown by competent evidence. All that is claimed, however, in this respect may be conceded and it does not alter the case presented for our consideration.

22d. The counsel in his brief makes this further point:

"Libel and slander cannot be justified by reason of another libel and slander." (*Patton* v. *Cruce,* 72 Ark., 125 Am. St. Rep., 46; *Berley* v. *Allison,* 181 Mass., 246, and other cases.) Hence, there cannot be presented by the defamer as an excuse, the opinion that his friend Dexter in whatever manner may have given him." (*sic.*)

It is very true that no man can justify a libel by quoting it from an opinion given him by counsel employed in the business involved.

There is no question that this principle is correct and sustained by abundant authority; but it has no application to the case at bar, since the judgment both in the court below and in this court is based on entirely different grounds.

23d. The attorney for the appellant elaborates his brief by the following proposition:

"As to the word 'thief' falsely imputed by the defendant, the jurisprudence does not permit of any evasions."

This doctrine is amply sustained by the numerous cases quoted from and cited, but the principle does not affect the result, as has been already shown.

24th. The 24th point presented is expressed as follows:

"The absence of a pecuniary loss to the injured party, and the lack of its allegation and proof, is not an impediment to this action."

As a general proposition where the offensive words are libelous *per se* this principle is sustained by the authorities cited and many others; but as malice is not presumed, but must be proved under our statute, in cases like the present, so must there be some proof of the consequent damage; or at least the damages cannot be presumed in the absence of malice, which has not been satisfactorily shown to exist.

25th. The 25th law point is a principle of universal application and no one will be found to deny it. It reads as follows:

"Compensation or indemnization should be granted for an injury to the character or reputation of a person, of whatever nature the injury may be."

The California cases cited sustain this proposition, and dozens of others can be found to the same effect; but neither the principle nor the decisions announced in the cases change the rules of evidence under which this case was decided in the court below. Many principles like this may apply to a case in the abstract which do not require discussion or consideration when the matter is presented on appeal.

26th. The last point presented by the laborious counsel for appellant reads as follows:

"The amount of the reparation requested is very moderate. The American courts have granted indemnization from $5,000 to $25,000 in cases of similar offenses, although not so malignant as that of usurper and thief."

The measure of damages cuts no figure in this case as it comes before us. The litigation never reached that point. Under proper proof the plaintiff may have been entitled to some damages, and the amount might have been fixed at a greater or less sum according to the facts. But there is no earthly reason to raise that question now and here. Had there been error requiring a reversal the question might have been pertinent on another trial in the district court.

It can serve no useful purpose to discuss at greater length the 26 questions presented when there is but one involved, and one, too, on which the case must, as this appeal comes here, turn for decision. But all have been passed in review and, there having been nothing found in the record on which to base a reversal, the judgment of the district court must be affirmed.

*Affirmed.*

Chief Justice Quiñones and Justices Hernández, Figueras and Wolf concurred.